PEYTON TARBELL *v.* THE TOWN OF PLYMOUTH.

*Soldiers' Bounties.   Contract.   Enlistment.   Agency.*

Under a vote authorizing the selectmen to fill the quota of the town at the best advantage they could, M., one of the selectmen, enlisted the plaintiff and promised to pay him $500. bounty, and as much more as the town should pay any other man enlisted and applied on the quota under the same call. The town paid some others $700. each. The day before the plaintiff enlisted, the selectmen agreed together not to pay any man above $500. M. and one other of the selectmen were present and participated officially at the muster-in of the plaintiff; but such other selectman supposed the contract was for only $500., according to the understanding between the selectmen, and the plaintiff supposed they both knew what M.'s promise was to him. *Held*, that the plaintiff was entitled to recover $700. bounty.

ASSUMPSIT to recover a town bounty. Plea, the general issue and trial by jury, at the December Term, 1866, BARRETT, J., presiding.

The plaintiff excepted to the charge of the court, as set forth in the opinion. Verdict for the defendants.

*S. Fullam,* and *Washburn & Marsh,* for the plaintiff.

*French & Johnson,* for the defendants.

The opinion of the court was delivered by

PECK, J.   The action is to recover a bounty which the plaintiff claims the defendants agreed to pay him for enlisting and serving as a soldier upon the quota of the defendants in the United States army, during a portion of the late rebellion. No question seems to have been made but that the vote of the town authorized the selectmen to make a contract to the extent the plaintiff claims it to have been made. The vote was, " that the selectmen be authorized and directed to go on and hire men to fill our quota, at the best advantage they can."

The plaintiff's evidence tended to show that by the terms of the contract the town was to pay the plaintiff $500., and as much more as the town should pay any other man for enlisting and serving on

Tarbell *v.* Plymouth.

their quota under that call for men. This is not so stated in terms in the exceptions, but what is stated shows that the plaintiff's evidence tended to prove the terms of the contract declared on; and counsel agree that the declaration counts on a contract to that effect. The plaintiff proved that the selectmen afterwards contracted to pay and did pay other recruits, three in number, on the same call, seven hundred dollars each. It appears that after the contract was made with the plaintiff, he was mustered into the service, at Windsor, on that quota of the town, and served out his term. It appeared that A. B. Martin was one of the selectmen, and that when out enlisting men the selectmen went separately and made contracts, and that Martin, as such selectman, made the contract with the plaintiff. The evidence on the part of the defendant tended to show that by the terms of the contract Martin made with the plaintiff, he was to pay the plaintiff $500., and no more. The only dispute is as to the plaintiff's right to the $200., the excess over and above the $500.

The defendants introduced the three selectmen who testified that the day before the contract was made with the plaintiff, the selectmen met and agreed that they would not give as bounty for recruits for one year, more than $500., and that if the quota could not be filled at that price, they would let the draft come; and also testified in effect that Martin was not authorized by the selectmen to give more than $500. It is to be inferred that the defendant claimed, on trial, that the contract with the plaintiff, to pay $500., and as much more as they should pay to any other recruit on that quota, if such was the contract, was not binding at least beyond the amount of $500., by reason of the restriction the selectmen had thus imposed on themselves, and for want of the assent of the other two selectmen, or one of them, to such contract. It appears that when the plaintiff was mustered in at Windsor on the quota of the town, Martin and one of the other selectmen officially acted and took part in it, but that such other selectman supposed the contract was for only $500., according to the understanding between the selectmen, before mentioned that only that sum should be paid.

The only point reserved in the charge is as to the effect to be given to this act of these two selectmen in thus causing the plaintiff to be

mustered-in under the contract. It does not appear that there was any evidence tending to show that the plaintiff ever had any knowledge of the private arrangement of the selectmen limiting the sum they would pay to $500. The plaintiff requested the court to instruct the jury that if two of the selectmen caused the plaintiff to be mustered into the service upon the quota of the town, the town was bound by the contract though made without the concurrence of one of said two selectmen, although that selectman did not know that the contract was for more than $500. ; the court refused thus to charge, and charged to the contrary. To sustain this ruling and instruction of the court, the counsel of the defendant refer to authorities showing that where an agent exceeds his authority under such circumstances that his principal is not bound, in order to bind the principal on the ground of a ratification of the act of his agent, the act relied on as a ratification must be done with a knowledge on the part of the principal of the nature and extent of the act of the agent. This is the general rule in such cases ; but there may be cases in which the principal, from what he does know, may be guilty of such negligence in not knowing more fully, as to put him in the same condition as if he had had full knowledge on the subject. But this case is not a case of an agent exceeding his authority as between him and his principal. The town is the principal and the selectmen the agent. As between the town and the selectmen, the authority given by the vote of the town was co-extensive with the contract, as the plaintiff claims it was made. The case shows that the selectmen in making enlistments went separately and alone and made contracts. The question is, whose fault it was that the other selectmen were not informed of the terms of the contract made by Martin ; and what the plaintiff had a right to suppose as to Martin having informed the other selectman of the contract, when he saw the two together acting in carrying out the contract by causing him to be mustered into the service, to the credit of the town, under the contract. We think he had a right to suppose the two selectmen, in participating in mustering him into the service, one of whom negotiated the contract, were doing it with knowledge of its terms and provisions, and that it is too late after the plaintiff has performed

Tarbell *v.* Plymouth.

fully his part of the contract for the town, to avoid it by showing that one of the selectmen who thus acted in carrying out the contract, was ignorant of its provisions. Martin must be taken to have known what the contract was, for he made it, and the other selectman acting with him must be taken to have known what he ought to have known, what the plaintiff had every reason to suppose, from his conduct, he did know. Suppose all the selectmen had written and signed a letter to the plaintiff, directing him to go to Windsor and be mustered into the service on the quota of the town in pursuance of the contract that Martin had made with him, without stating the terms of the contract, and the plaintiff had complied with such direction and performed the service under his enlistment, would it not be a ratification of the contract? Could it be avoided by the town by showing that two of the selectmen signed such letter in ignorance of the terms of the contract? I think it could not have been thus avoided. The act of the two selectmen in participating officially in mustering the plaintiff into the service, under the circumstances, was equally significant as a ratification of the contract. On this point we think there was error in the ruling of the county court. Some other questions incidentally connected with this question have been discussed in argument, but they are not sufficiently presented or raised by the exceptions to warrant us in deciding them.

As to the evidence offered to contradict Martin, and excluded by the court, we are not all impressed alike as to its admissibility, and we leave the question undecided.

Judgment reversed and new trial granted.